UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT LOUIS PRUE, JR.,<br><br>Defendant. | 3:12-CR-30004-RAL<br><br>OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |

A federal grand jury indicted Robert Louis Prue, Jr. (Prue) on four counts of aggravated sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(3); two counts of sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2243(a), and 2246(2); two counts of abusive sexual contact in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3); and four counts of child abuse in violation of SDCL §§ 26-10-1 and 26-1-1. Doc. 3. On February 6, 2013, Prue appeared before this Court and entered a guilty plea to one count of abusive sexual contact and one count of sexual abuse of a minor. Doc. 43. On April 8, 2013, this Court held a sentencing hearing in Prue's case and imposed a custody sentence of 180 months on the sexual abuse count and 24 months on the abusive sexual contact count, to be served consecutively, and five years of supervised release on each count, to be served concurrently. Docs. 47 at 2; 50 at 2–3. At that time, the remaining counts in the indictment were dismissed. Docs. 47 at 2; 50 at 1.

Prue is currently incarcerated at Petersburg Medium Federal Correctional Institution (Petersburg Medium FCI) and has filed a pro se motion for compassionate release, citing his age and health conditions in combination with the global COVID-19 pandemic as justification. Doc. 58. The Federal Public Defender Office for the Districts of North and South Dakota (FPD) has

1

submitted a supplement to Prue's motion, and the Government has responded in opposition. Docs. 64, 68. FPD has replied. Doc. 69. This Court has considered Prue's motion, and for the reasons stated herein, denies his motion at this time.

I.   **Background**

Prue's conviction resulted from a sexual assault he perpetrated on a minor victim who was under his custody, care, and control at the time. Doc. 39 at 3; PSR at ¶¶ 8, 15, 75. The facts relating to the crimes are disturbing, and they had severe, lasting effects on the victim. PSR at ¶ 9.

For approximately seven years, Prue was in a romantic relationship with Maria Janis (Janis). PSR at ¶ 8. During their relationship, Prue and Janis lived in a home with Janis's five children, T.S., G.J. (victim), M.J., S.R., and S.J. PSR at ¶ 8. Prue was a parental figure to G.J. and her siblings. Doc. 39 at 3. Prue began sexually abusing G.J. while the family lived in Washington State around 2008. PSR at ¶ 8. In late Spring of 2011, the family moved to a tribal housing unit in Milk's Camp, South Dakota. Doc. 39 at 1; PSR at ¶ 8. Prue's abuse of G.J. continued. PSR at ¶ 8.

When the sexual assaults in South Dakota occurred, between June 22, 2011, and September 22, 2011, Prue was 34 years old and G.J. was 12. Doc. 39 at 2. Prue primarily sexually abused G.J. in the shower after asking G.J. to shower with him. PSR at ¶ 8. Prue touched G.J.'s genitals and breast in a sexual manner and asked her to give him oral sex and engage in intercourse. Doc. 39 at 1–2; PSR at ¶ 8. G.J. denied Prue's request for oral sex. PSR at ¶ 8. While G.J. was in the shower with Prue, Prue touched her vagina and/or buttocks with his fingers and mouth. PSR at ¶ 8. Prue also attempted to have G.J. sit on his lap while in the shower. PSR at ¶ 8.

Under the sentencing guidelines, Prue's total offense level for this offense was 26 and Prue was in criminal history category II. PSR at ¶¶ 33, 52, 80. This meant that Prue's advisory guideline

range was 70 months to 87 months custody. PSR at ¶ 80. However, under the plea agreement, the parties agreed to jointly recommend a 17-year sentence. Doc. 38 at 5. If Prue had been convicted of the aggravated sexual abuse of the minor S.R. charged in Count I of the indictment, he would have faced a mandatory minimum 30-year sentence. Doc. 1 at 1; 18 U.S.C. § 2241(c). On the counts where Prue pleaded guilty, the maximum term of imprisonment was 15 years in custody for the sexual abuse of a minor and 2 years in custody for the abusive sexual contact. PSR at ¶ 79. This Court held a sentencing hearing in Prue's case on April 8, 2013. Doc. 47. After hearing argument from both parties as to the appropriate sentence and hearing from T.K.S., a victim on a different count in the case, and Prue himself, this Court sentenced Prue to 204 months custody followed by a five-year term of supervised release. Docs. 47 at 2; 50 at 2–3. Prue has been in custody since February 16, 2012, and is currently incarcerated at Petersburg Medium FCI. Docs. 17; 63 at 21; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 14, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 8, 2020).

Prue currently suffers from the following medical conditions: asthma, a seizure disorder, and obesity. Doc. 60 at 1–2, 27, 317. He has now filed a motion for compassionate release with this Court based on those conditions and the increased susceptibility to complications to COVID-19 he faces if he contracts the disease. Doc. 58.

## II. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute, as amended by the First Step Act of 2018, provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; ...
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

4

### III. Discussion

Prue submitted a request for compassionate release to the warden of his institution on June 25, 2020, outlining some of his medical conditions and his possible release plan. Doc. 63 at 2–4. Prue's request was submitted more than thirty days ago, and the BOP has not submitted a motion for compassionate release on Prue's behalf. Therefore, this Court may entertain Prue's motion directly.

In determining whether compassionate release is justified, this Court considers the sentencing factors in 18 U.S.C. § 3553(a), determines whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluates whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c); United States v. Moore, 963 F.3d 725, 727 (8th Cir. 2020). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. Prue's guideline range of 70-87 months did not reflect the seriousness of all of what Prue had done. The nature and circumstances of the offense are detailed above and are disturbing. The maximum term of imprisonment was 15 years

for the sexual abuse of a minor count and 2 years for the abusive sexual contact count. The parties, well aware of the multiple counts and multiple young victims, negotiated and stipulated to a 204-month custody sentence. A sentence of the maximum term of imprisonment like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 204-month sentence was designed to protect the public and to provide Prue with sex offender treatment in an effective manner. Doc. 50 at 2; see Doc. 60 at 338. Such a sentence also was required to protect the public and serve the interests of punishment. Overall, the 204-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

Prue has now served approximately 50% of his full sentence and approximately 58% of his "statutory term." Doc. 60 at 341. Since he entered BOP custody, Prue, now age 43, has completed education courses, including victim impact group and home ownership. Docs. 60 at 338; 63 at 30. He has only one discipline report and appears to have had consistent and productive work details. Docs. 60 at 337; 63 at 31.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a

"catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Prue argues primarily that he qualifies for release under the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D), but argues in the alternative that he would qualify under comment note 1(A)(ii). Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). However, Prue does not claim that it is his serious physical or medical conditions that makes him unable to provide self-care in his correctional facility. Rather,

he argues that the conditions of confinement, a factor not contemplated by the comment note, make it difficult or impossible to practice the type of self-care recommended by the CDC. Therefore, Prue cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(A)(ii).

This Court next considers Prue's circumstances under the "catch all provision." Prue argues that his underlying health conditions combined with the increased risks he faces if he contracts COVID-19 establish an "extraordinary and compelling" reason other than those specifically identified to justify a sentence reduction. The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Petersburg Medium FCI currently has one active inmate infection of COVID-19 and one active COVID-19 case among the facility's staff; two inmates have recovered from the illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Sept. 14, 2020). The question becomes whether Prue's medical conditions—asthma, a seizure disorder, and obesity—combined with the conditions of confinement during the COVID-19 pandemic justify compassionate release.

It is true that the CDC has recognized that individuals suffering from obesity and who have a body mass index of 30 or higher have an increased risk of developing a severe illness if they contract COVID-19. Because COVID-19 is a new disease and so much is still unknown about how it affects individuals, this Court cannot say to what extent Prue's life is threatened by the

existence of COVID-19 in Petersburg Medium FCI, especially considering the precautions put in place by the BOP to protect him and his fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 8, 2020).

Asthma (moderate to severe) is a risk factor for more severe complications of a COVID-19 infection, but the extent of those risks is yet unknown, particularly if Prue's condition is well-controlled. The CDC has not recognized Prue's seizure disorder as a significant risk factor for contracting or developing a severe illness from COVID-19. Additionally, based on the medical records, Prue's asthma and seizure disorder appear to be stable, managed, and well-controlled with his medication and chronic care visits. Doc. 60 at 3, 140, 233, 285–87, 316.

Additionally, Prue contends he is more susceptible to COVID-19 due to his race. Indeed, the CDC noted there is evidence that some racial and ethnic minority groups are being disproportionately affected by COVID-19. Health Equity Considerations and Racial and Ethnic Minority Groups, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Sept. 8, 2020). Even so, the CDC attributes this to inequities in social determinants of health such as poverty and access to health care. Id. Thus, courts have not found race to be a risk factor for COVID-19 similar to age or medical condition. See, e.g., United States v. Leigh-James, No. 3:15-CR-188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020); United States v. Chambers, No. CR 18-47, 2020 WL 4260445, at *4 (E.D. La. July 24, 2020).

Prue has served a little over half of his 204-month sentence for repeatedly sexually abusing his girlfriend's 12-year-old daughter while she and her siblings were under his care and custody. Prue appears, to his credit, to have worked on improving himself in custody. But the original

sentence was chosen with care, considering Prue's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

### IV.   Conclusion and Order

Therefore, it is hereby

ORDERED that Prue's motion for compassionate release, Doc. 58, is denied.

DATED this 14th day of September, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE